UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYEES DIVISION/IBT,

       Plaintiff,                          Case No. 19-cv-13246
                                             Hon. Matthew F. Leitman

v.

GRAND TRUNK CORPORATION, *et al.*,

       Defendants.

_____/

## ORDER (1) GRANTING DEFENDANTS' MOTION TO TRANSFER (ECF No. 13) AND (2) TRANSFERRING THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

This case is one of four virtually identical declaratory judgment actions filed by labor union Brotherhood of Maintenance of Way Employees Division/IBT ("BMWED").[1] In these four actions, BWMED seeks to compel certain railroads, including those owned by Defendant Grand Trunk Corporation, to collectively bargain with BMWED on a one-on-one basis instead of on a national basis with a coalition of other railroads. (*See* Compl., ECF No. 1.)  After BMWED filed these four actions, the railroads that it sued (and others) filed suit BMWED in the United States District Court of the District of Columbia in an effort to require BMWED to participate in national bargaining. *See Alton & S. Ry. Co.* v. *BMWED*, Case No. 19-03586 (D.D.C.) ("*Alton II*").  That case is assigned to the Honorable

---

[1] *See BMWED v. Union Pac. R.R. Co.*, Case No. 19-00466 (D. Neb.), *BMWED v. Consol. Rail Corp.*, Case No. 19-13112 (E.D. Mich.), and *BMWED v. Norfolk S. Ry. Co.*, Case No. 19-00420 (E.D. Tenn.).

1

Thomas F. Hogan.  In 1996, Judge Hogan the rejected BMWED's attempt to avoid national bargaining during a previous round of negotiations. *See Alton & S. Ry. Co. v. BMWED*, 928 F.Supp. 7 (D.D.C. 1996) ("*Alton I*").

Now before the Court is a motion by Grand Trunk to dismiss this action, to stay this action pending resolution of *Alton II*, or to transfer this action to the United States District Court for the District of Columbia so that it can be consolidated with *Alton II*. (*See* Mot., ECF No. 13.)  When faced with nearly identical motions, Judges in the United States District Courts for the Eastern District of Tennessee and the District of Nebraska have transferred their actions to Washington D.C. so that this dispute can be definitively resolved by a single Judge.  This Court now joins them.  As the former Chief Judge of this Court held in 1994 when he rejected a different union's attempt to compel local bargaining, "the dispute in this case is one of national ramifications" and it therefore "begs for a single, definitive ruling." *BMWED v. Consolidated Rail Corp.*, 1994 WL 808075, at \*4 (granting motion to transfer to the District of Columbia so that dispute could be decided by Judge Hogan). Thus, for the reasons stated below, the Court **GRANTS** Grand Trunk's motion to transfer and **TRANSFERS** this action to the United States District Court for the District of Columbia.  In light of that ruling, the Court will not rule on the portions of Grand Trunk's motion in which it seeks dismissal of BMWED's Amended Complaint or a stay.

## I

"BMWED is a national union that is the collective bargaining representative … of the maintenance of way employees of most of the railroads in the United States." (Declaration of Peter Kennedy, BMWED's Director of Strategic Communication and

Research, at ¶2, ECF No. 20-2, PageID.203.)  "Among other things, maintenance of way employees are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting, and maintaining the track and right of way" for railroads, including Grand Trunk and its subsidiaries. (*Id.*)

"BMWED is a party to collective bargaining agreements with each of [Grand Trunk's] railroads that cover the maintenance of way employees of those railroads." (*Id.* at ¶5, PageID.204.)   These agreements are governed by the Railway Labor Act, 45 U.S.C. § 151 *et seq*. (the "RLA"). (*See id.* at ¶2, PageID.203.)  BMWED's labor agreements with Grand Trunk under the RLA "do not expire; rather they are periodically amended." (*Id.* at ¶6, PageID.204.)  When either party seeks "such an amendment, RLA Section 6 requires [BMWED or Grand Trunk] provide written notice of the changes it seeks (commonly referred to as a "Section 6 Notice")." (*Id.* at ¶7, PageID.204.)

The parties then negotiate the terms of the amendment.  These negotiations either take place between BMWED and Grand Trunk directly (through what is known as "local handling") or between BMWED and a national coalition of railroads ("national handling"). (*See id.* at ¶¶ 10-11, PageID.205-206.)

On or about November 4, 2019, BMWED served a Section 6 Notice on Grand Trunk and several other railroads. (*See id.* at ¶16, PageID.2018.)  In that notice, BMWED said that it wanted to renegotiate the terms of its collective bargaining agreement with those carriers. (*See id*.)  BWMED told some of the railroads that it "was amenable to bargaining with [them via] national handling." (*Id.* at ¶17, PageID.208.)  But in the Section 6 Notice that BMWED served on Grand Trunk and others, BWMED said that it wanted to "bargain

3

directly with each of those railroads in single carrier bargaining" through local handling. (*Id.* at ¶18, PageID.208-209.)

**II**

On November 4, 2019, BMWED filed this declaratory judgment action against Grand Trunk. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 6.) It alleges, among other things, that "[o]n information and belief, including the experience of bargaining over the past Section 6 Notices, [Grand Trunk] will oppose single carrier bargaining with BMWED." (Am. Compl. at ¶16, ECF No. 6, PageID.25.) And BMWED says that that refusal violates the RLA. (*See id.*, PageID.28.) It therefore asks the Court to require Grand Trunk to "bargain with BMWED on a single-carrier" basis. (*Id.*) BMWED filed nearly identical declaratory judgment actions against several other railroads with whom it requested negotiation via local handling.[2]

Grand Trunk did not file a counterclaim in this action seeking to compel BMWED to participate in national handling. Instead, Grand Trunk and several other railroads filed their own suit against BMWED in the United States District Court for the District of Columbia seeking that relief. *See Alton II*, Case No. 19-03586 (D.D.C.). That court is very familiar with the particular issues in dispute here.[3] In *Alton I*, *supra*, that court previously considered and rejected BMWED's attempt to avoid national handling during a round of

---

[2] *See BMWED v. Union Pac. R.R. Co.*, Case No. 19-00466 (D. Neb.), *BMWED v. Consol. Rail Corp.*, Case No. 19-13112 (E.D. Mich.), and *BMWED v. Norfolk S. Ry. Co.*, Case No. 19-00420 (E.D. Tenn.).

[3] *Alton II* is assigned to Judge Hogan, the same jurist who presided over *Alton I*.

bargaining that began in 1994.  It held that BMWED was "permanently enjoined and ordered to bargain, on a national-handling basis with the duly authorized group representative of the [plaintiff railroads]." *Alton I*, 928 F.Supp. at 20.  The court was "persuaded that the overwhelming evidence of the practical appropriateness of the national handling [did] not justify abandoning the practice merely because one side is dissatisfied with the results of the recent disputes." *Id.* at 19.  In *Alton II*, the plaintiff railroads seek to reaffirm this ruling from *Alton I.*

### III

On January 6, 2020, Grand Trunk filed its pending motion to dismiss, transfer, or stay. (*See* Mot., ECF No. 13.)  Grand Trunk argues that (1) "BMWED's suit is barred by principles of issue preclusion" because "[t]he issue presented in this case is the same as the issue that Judge Hogan resolved [against BWMED] in *Alton [I]*," (2) "the suit should be dismissed because it fails to join the other rail carriers engaged in national bargaining, who are necessary parties to this lawsuit," and (3) "if this suit is not dismissed, the interests of justice – especially the interest of judicial efficiency – demand that this action be transferred to the District of Columbia or stayed pending resolution of *Alton II*." (*Id.*, PageID.56-57.)  BWMED opposes the motion. (*See* BMWED Resp., ECF No. 20.)

### IV

### A

Grand Trunk requests that the Court transfer this action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).  That statute provides that "[f]or convenience of the parties and witnesses, in the interest of justice, a district court

5

may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (*quoting Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)).

When deciding whether to transfer, a court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). *See also Overland, Inc. v. Taylor,* 79 F.Supp.2d 809, 811 (E.D. Mich. 2000) (listing the following factors that courts should consider when determining whether to transfer an action under Section 1404(a): "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties, (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances"). Courts should weigh these considerations on an "individualized, case-by-case" basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). When doing so, "a plaintiff's choice of forum [is entitled to] substantial deference." *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734, 749 (E.D.Mich. 2004).

6

**B**

The United States District Courts for the District of Nebraska (in *BMWED v. Union Pac. R.R. Co.*) and the Eastern District of Tennessee (in *BMWED v. Norfolk S. Ry. Co.*) have both recently confronted whether an action nearly identical to this one should be transferred to the District of Columbia.  Both of those courts concluded that the Section 1404(a) factors "warrant[ed] transfer." *BMWED v. Union Pac. R.R. Co.*, 2020 WL 3571817, at *11 (D. Neb. July 1, 2020). *See also BMWED v. Norfolk S. Ry. Co.*, Case No. 19-13246, Dkt. No. 30-1 (E.D. Tenn. June 29, 2020) (same).

In *Union Pacific*, the district court concluded that the "interest of justice [factor] strongly favor[ed] transfer" to the District of Columbia so that the question of whether BMWED could compel railroads to bargain via local handling could be decided in a single action by a single decision maker. *Union Pac.*, 2020 WL 3571817, at *11.  As that court explained:

> **Turning to the interest of justice, the Court finds this factor strongly favors transfer**. "Courts weigh the interest of justice factor very heavily." *GMAC/Residential Funding Corp.*, 2003 WL 1572007, at *2 (citing *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1996)). "The interest of justice factor 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Id.*(quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986)). The interest of justice includes considerations such as "judicial economy, plaintiff's choice of forum, comparative costs to the parties litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, advantages of having a local court determine questions of local law." *Melichar*, 309 F. Supp. 3d at 726.
> "[J]udicial efficiency and consistency are significant factors to consider in deciding whether a defendant has met its burden of

7

showing convenience and fairness support a transfer of venue under § 1404(a). *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17CV478, 2018 WL 6427872, at \*5 (D. Neb. Dec. 6, 2018) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). As discussed above relating to the Court's decision declining to dismiss, **judicial economy is best served by litigating in front of one federal district judge rather than four judges.** *See GMAC/Residential Funding Corp.*, 2003 WL 1572007, at \*2 (citing 17 Moore's Federal Practice § 111.13[1][o]) ("Judicial economy is served by allowing related actions to proceed in the same district."). **Here, there is no question that judicial resources would be best utilized by litigation in a single court (the D.C. Court) where all parties may be joined. In this manner the parties will obtain a single, "national" result rather than numerous "local" and piecemeal decisions from multiple courts.** *See* Filing 30-1 at 7 (Judge Corker finding that "judicial economy weighs in favor of transferring the current matter to the District of Columbia to allow the identical cases to be decided in a single action"). **This is particularly true because "[t]he avoidance of duplicative or piecemeal litigation is a factor that weighs in favor of transferring an action to a district in which all parties can be joined in a single action."** *GMAC/Residential Funding Corp.*, 2003 WL 1572007, at \*2 (citing *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 932 (W.D. Mo. 1985)). **Because all relevant parties are involved in the already-pending D.C. action, this consideration heavily favors transfer.**

*Id.* at \*10 (emphasis added). The district court in the Eastern District of Tennessee reached the same conclusion. *See BMWED v. Norfolk S. Ry. Co.*, Case No. 19-13246, Dkt. No. 30-1 at 7 (E.D. Tenn. June 29, 2020) ("judicial economy weighs in favor of transferring the current matter to the District of Columbia to allow the identical cases to be decided in a single action").

The courts in *Union Pacific* and *Norfolk Southern* also found that many of the other Section 1404(a) factors also favored transfer to the District of Columbia. With respect to

8

convenience of the parties, the courts concluded that that factor "warrant[ed] transfer because both parties' counsel are in the District of Columbia, BMWED maintains an office there, and collective bargaining between the parties has historically taken place there. Furthermore, it is inconvenient for both [the railroads] and BMWED to be parties to multiple potentially conflicting actions on the same issue." *Id. See also Union Pac.*, 2020 WL 3571817, at *9 (explaining that the convenience of the parties and witnesses "slightly favor[ed] transfer" because, among other things, "the location of the parties' counsel and any relevant documents and the location where the underlying conduct occurred" was in Washington D.C.). The court in *Union Pacific* also concluded that the convenience of the witnesses factor also favored transfer:

> As to convenience of the witnesses, courts look to the "willingness of witnesses to appear, ability to subpoena witnesses, [and] adequacy of deposition testimony" along with the witnesses' location. *Melichar*, 309 F. Supp. 3d at 726; *In re Apple, Inc.*, 602 F.3d at 913 (considering the location of potential witnesses). While the parties have not expressly addressed potential witnesses in this case, the convenience of any such witnesses would also favor transfer. A case involving a purely legal question will not require fact witnesses. To the extent any witnesses are involved, those same witnesses will presumably also be involved in the currently pending D.C. case, and litigating at least two cases in conjunction with one another will reduce the hassle for witnesses. The Court finds no reason to believe the parties would have an easier or harder time subpoenaing witnesses in one locale over the other or in arranging their travel to Washington, D.C. rather than Nebraska. Thus, this factor slightly favors transfer.

*Union Pac.*, 2020 WL 3571817, at *10. When the courts weighed all of the relevant factors, they concluded that transfer was appropriate under Section 1404(a).

**C**

For essentially the same reasons persuasively explained by the district courts in *Union Pacific* and *Norfolk Southern*, this Court likewise concludes that the Section 1404(a) factors collectively weigh in favor of transferring this action to the United States District Court for the District of Columbia.

First, and most importantly, the interest of justice and judicial efficiency factors strongly favor a transfer to the District of Columbia. If BMWED and different railroads continue to litigate in different venues, there is a real risk that one court could mandate that the parties engage in local handling while a different court mandates that the same parties engage in national handling. Thus, this precisely the kind of dispute that "begs for a single, definite ruling lest bargaining come to a halt due to potentially conflicting proceedings and edicts." *Consolidated Rail*, 1994 WL 808075, at *4. As the court in *Union Pacific* recently held, "there is no question that judicial resources would be best utilized by litigation in a single court (the D.C. Court) where all parties may be joined. In this manner the parties will obtain a single 'national' result rather than numerous 'local' and piecemeal decisions from multiple courts." *Union Pac.*, 2020 WL 3571817, at *10. *See also Consolidated Rail*, 1994 WL 808075, at *6 ("[T]he importance of uniform decision making for the railroad industry's current round of collective bargaining is of paramount importance").

Transfer to the District of Columbia is also in the interest of justice and judicial economy because Judge Hogan, who is overseeing *Alton II*, is intimately familiar with the issues in dispute here. Thus, because Judge Hogan is best positioned to effectively and efficiently resolve this dispute on a national basis for all railroads across the country,

10

transferring this action to the District of Columbia is in the interest of justice. *See*, *e.g.*, *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 363 (W.D.N.C. 2003) (concluding that it was "expedient" and in the interest of judicial efficiency "to allow a court that is already familiar with [the parties'] essential arguments to adjudicate" transferred case).

The other Section 1404(a) factors – such as the convenience of the parties and witnesses – when considered collectively, also favor transferring this action to the District of Columbia.  The "issue in this case is purely a legal one – can [BMWED] successfully insist upon [local] bargaining?" *Consolidated Rail*, 1994 WL 808075, at *4.[4]   Thus, "[b]ecause of the solely legal nature of this case, this Court predicts with some certainty (and the parties essentially concede) that this question can be resolved on the basis of a relatively small documentary record and without the need of an evidentiary hearing, let alone a trial. Neither forum, then, should pose an inconvenience to the parties, especially when one considers that each side is represented by highly competent national as well as local counsel." *Id.*  Indeed, primary counsel for both BMWED and Grand Trunk are located in Washington D.C., and BMWED maintains an office there.  Moreover, to the extent that witnesses may be needed to resolve this dispute, neither party has identified any witnesses who live in this judicial district and for whom it would be more convenient to litigate this

---

[4] As the court in *Union Pacific*, *supra*, noted, in that case, BMWED and the defendant railroad both "argue[d] that this matter is a purely legal question that will not involve significant facts, documentation, or discovery." *Union Pac.*, 2020 WL 3571817, at *9.

dispute here.[5]  In addition, "the legal issues in this case center around interpretation of the RLA, a federal statute, not any substantive state law.  Therefore, the parties' comfort and familiarity with [Michigan] state law has no bearing on the Court's analysis." *Union Pac.*, 2020 WL 3571817, at *9.

For all of these reasons, and the reasons thoughtfully explained by the district courts in *Union Pacific* and *Norfolk Southern*, "the convivence of the parties and witnesses slightly favor transfer and the interest of justice strongly favors transfer." *Id.* at *11.  Thus, Grand Trunk "has met its burden of demonstrating at § 1404(a)'s factors ultimately warrant transfer." *Id.*

## D

BMWED opposes transfer to the District of Columbia.  Its primary argument against transfer is that it filed its declaratory judgment action in this Court first before Grand Trunk and the other railroads filed their suit in the District of Columbia.  (*See* BMWED Resp. Br., ECF No. 20, PageID.193.)  BMWED says the Court should enforce the "first-to-file rule and the presumption in favor of BMWED's choice of forum." (BMWED Resp. Br., ECF No. 20, PageID.193.)  The Court disagrees.

---

[5]  BMWED contends that this forum is more convenient because "BMWED's headquarters is in this District." (BMWED Resp. Br., ECF No. 20, PageID.194.) But BMWED has not sufficiently explained why the location of its headquarters is relevant to the convenience inquiry.  It has not, for example, identified any witnesses or documents located at its headquarters that are pertinent to this dispute.  In any event, even if the location of BMWED's headquarters did weigh in favor of keeping this action here, BMWED has not persuaded that the Court that that one factor outweighs all of the other factors, discussed in detail above, that favor transfer.

Under the first-to-file rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sports Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (internal quotation marks omitted). "But [a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Id.* "District courts have the discretion to dispense with the first-to-file rule where equity so demands." *Id.*

BMWED raised this same "first-to-file" argument in both *Union Pacific* and *Norfolk Southern*, and those courts both rejected it. In *Union Pacific*, the Nebraska district court concluded that the first-to-file rule did not bar transfer because that rule "yields to the interests of justice, and will not be applied where a court finds compelling circumstances supporting its abrogation." *Union Pac.*, 2020 WL 3571817, at *11 (quoting *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)). As that court explained:

> An example of a "red flag" indicating compelling circumstances exist to avoid application of the first-filed rule is a lawsuit for declaratory judgment. *Id.*; *Boatmen's First Nat. Bank of Kansas City v. Kansas Pub. Employees Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995). An action seeking declaratory judgment is red-flagged because "such an action may be more indicative of a preemptive strike." *Id.* (citing *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 489 (8th Cir. 1990)). **Here, although BMWED filed first in Nebraska, there is no question BMWED's complaint was a preemptive strike. BMWED brought this action based on its anticipation that Union Pacific would seek to bargain nationally as a member of the NCCC**. *See* Filing 1 at 6; *see also* Filing 30-1 at 7 (Judge Corker finding that "BMWED brought this suit in anticipation that [the railroad] would oppose local handling").

13

Further, the first-filed rule "yields to the interests of justice," *Nw. Airlines, Inc.*, 989 F.2d at 1005, and, as discussed above, the interest of justice, particularly judicial economy, strongly favors transfer. *See supra* Section II.A; II.B.2. **Lastly, the purpose of the first-filed rule is to avoid conflicting rulings and conserve judicial resources. Here, application of the rule would likely increase conflicting rulings and would not conserve judicial resources because it would require multiple courts to litigate the same issues rather than allowing the court with jurisdiction over all parties (Washington, D.C.) to address these matters together. Applying the first-filed rule in this case and allowing this matter to be litigated throughout the country is antithetical to the policy objectives of the first-filed rule.** Given this rationale and that the interest of justice and judicial economy *strongly* favor transfer, the Court finds there are compelling circumstances supporting its decision not to apply the first-filed rule. *See* Filing 30-1 at 7-8 (Judge Corker concluding that "[j]udicial economy warrants consolidation" and "the interests of justice, including systemic integrity and fairness, weigh heavily in favor of transfer[ ]"). Accordingly, the first-to-file rule will not prevent the transfer of this case to the United States District Court for the District of Columbia.

*Id.* (emphasis added). The Tennessee district court in *Norfolk Southern* reached the same

conclusion:

Most importantly, the facts weigh against strict application of the first-to-file rule. First, BMWED brought this suit in anticipation that NSR would oppose local handling. [Doc. 1, p. 6]. Second, the policy disfavoring forum shopping also weighs in favor of transfer to the District of Columbia. Although both parties are advocating for a forum with precedent that appears to be more favorable to their respective positions, it looks as if BMWED lost in the District Court for the District of Columbia in 1996 and is now attempting to try again in more favorable forums— this District, the Eastern District of Michigan, and the District of Nebraska. Judicial economy warrants consolidation, which is precisely what NSR and 25 other rail carriers have done by filing suit against BMWED in the District of Columbia. Therefore, the interests of justice,

14

> including systemic integrity and fairness, weigh heavily in
> favor of transferring this case to the District of Columbia.

*BMWED v. Norfolk S. Ry. Co.*, Case No. 19-13246, Dkt. No. 30-1 at 7-8 (E.D. Tenn. June 29, 2020).

For all of these same reasons, this Court declines to enforce the first-to-file rule under the facts that exist here.  In this case, BMWED filed its declaratory judgment action in anticipation that Grand Trunk would oppose local handling.  This BMWED's first-to-file status is entitled to less weight. *See*, *e.g.*, *Zide Sports Shop*, 16 F. App'x at 437 (holding that district court did not abuse its discretion when it failed to enforce first-to-file rule and explaining "[f]actors that weigh against enforcement of the first-to-file rule include … anticipatory suits[] and forum shopping").  Moreover, as explained by the court in *Union Pacific*, "the purpose of the first-filed rule is to avoid conflicting rulings and conserve judicial resources," and enforcing the first-filed rule here would run directly contrary to that goal. *Union Pac.*, 2020 WL 3571817, at *11.  Finally, "given … that the interest of justice and judicial economy *strongly* favor transfer … there are compelling circumstancing supporting [the] decision not to apply the first-filed rule." *Id.* (emphasis in original).  For all of these reasons, the Court declines to enforce the first-to-file rule under the circumstances that exist here.

BMWED also argues that the Court should not transfer this action to the District of Columbia because that court "is not vested with special jurisdiction over RLA matters." (BMWED Resp. Br., ECF No. 20, PageID.196.)  And BMWED says that while that "court has heard several cases concerning national versus single carrier bargaining, those were

handled by various judges over a period of fifty years." (*Id*.)  BMWED thus contends that it would not be more efficient to have this case heard in that court.  But under the unique circumstances that exist here, the same Judge who presided over *Alton I* is currently presiding over *Alton II*.  Thus, even though the District of Columbia is "not vested with special jurisdiction," it cannot be disputed that Judge Hogan has the most familiarity with the legal rules at issue in this case, and he is best positioned to interpret his earlier ruling in *Alton I* and determine how or if that ruling applies to the dispute here.  The Court will therefore transfer this action to the United States District Court for the District of Columbia.

## V

For all of the reasons stated above, Grand Trunk's motion to dismiss, transfer, or stay is **GRANTED** to the extent that it seeks a transfer of this action.  The Clerk of the Court is **DIRECTED** to **TRANSFER** this action to the United States District Court for the District of Columbia.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 7, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 7, 2020, by electronic means and/or ordinary mail.

s/ Holly A. Monda
Case Manager
(810) 341-9764